UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Regional Council of
Carpenters Employee Benefits
Fund, *et. al.*,

    Plaintiffs,                                                     Case No. 16-12909

v.                                                                Hon. Sean F. Cox

Elite Poured Walls, Inc., *et. al.*,

    Defendants.
_____/

## OPINION & ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS

This case involves Plaintiffs' claims that Defendants violated their collective bargaining agreement ("CBA") with Plaintiff Michigan Regional Council of Carpenters ("Union) by failing to pay fringe benefits and by failing to submit pertinent books and records for an audit. Plaintiffs are the Union and 11 separate trust funds. Plaintiffs bring claims under ERISA and the Michigan Building Contract Fund Act. Defendants Elite Poured Walls and Mark Worrell conduct business in the building and construction industry. Defendants are allegedly obligated by the CBA to make employee fringe benefit contributions, for each employee covered by the CBA, to the Plaintiff Funds. According to the CBA, Defendants are also required to submit to periodic auditing of their books by Plaintiffs to ensure proper contributions are being made.

Currently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In it, Defendants argue that: (1) Plaintiffs' complaint should be dismissed because no effective CBA or trust agreement was effective to require contributions for

1

the period of 2011 through present; (2) Plaintiffs' complaint should be partially dismissed with respect to all claims for damages for the period of August 1, 2012 through present because the CBA was terminated as of August 1, 2012; (3) Plaintiffs' personal liability claims against Defendant Worrell should be dismissed because Plaintiffs have not plausibly alleged that Worrell is a fiduciary under ERISA; and (4) Plaintiffs' claims under the Michigan Building Contract Fund Act should be dismissed because they are preempted by ERISA. The motion has been fully briefed by the parties and the Court heard oral argument as to the motion on May 11, 2017.

Defendants' 12(b)(6) motion should be dismissed because it pertains largely to issues of fact as opposed to the insufficiency of the pleadings. The motion is therefore **DENIED**.

## BACKGROUND

A.  **Factual Background**

**The Parties**

Plaintiffs in this case are: (1) the Michigan Regional Council of Carpenters ("Union"); (2) the Trustees of the Michigan Regional Council of Carpenters' Employee Benefits Fund; (3) Trustees of the Carpenters' Pension Trust Fund – Detroit and Vicinity; (4) Trustees of the Michigan Regional Council of Carpenters' Annuity Fund; (5) Trustees of the Michigan Statewide Carpenters and Millwrights Joint Apprenticeship and Training Fund; (6) Trustees of the Michigan Fund for the Advancement of the Carpentry Trade; (7) Trustees of the Carpenters' Labor Management Productivity and Training Fun; (8) Trustees of the Carpenters' Guaranty Fund; (9) Trustees of the Carpenters' Industry Advancement Fund; (10) Trustees of the Carpenters' Apprentice Reimbursement Fund; (11) Trustees of the Carpenters' Working Dues

2

Fund; and (12) the Michigan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America.

Defendant Mark Worrell ("Worrell) is an owner, officer and member of Defendant Elite Poured Walls, Inc. ("EPW") (collectively, "Defendants").

**Allegations In Plaintiff's Amended Complaint**

On May 30, 2003, Defendant Worrell (on behalf of Defendant EPW) executed a Poured Concrete Wall Association CBA, which extended through the 2003 year. (Am. Compl. at ¶10). The CBA, originally dated 1999-2001, is between Defendant EPW and Plaintiff Michigan Regional Council of Carpenters (the "Union"). The Plaintiff Funds are third-party beneficiaries to the CBA. (*Id.* at ¶13).

Under its terms, the CBA "shall be renewed from year to year unless either party shall notify the other party, in writing, at least 90 days prior to any August 1st, beginning with August 1, 2001, of its desire to change in any way or terminate this Agreement." (Ex. 1 to Am. Compl. at Pg ID 30). The CBA further provides that "[s]uch written notice shall be sent by certified mail to the other party. In the event notice is given by either party to change and no agreement on such changes is reached prior to August 1, 2001, this Agreement shall be deemed to have terminated on August 1, 2001." (*Id.*).

Plaintiffs allege that since at least May 30, 2003 to present, EPW was bound to the parties' CBA. (*Id.* at ¶11). Pursuant to the CBA, EPW agreed to make employee fringe benefit contributions and assessments to the Funds for each employee covered by the CBA, which are individuals in the appropriate bargaining unit who perform covered work, and to be bound by the terms and conditions set forth in the Funds' Trust Agreements. (*Id.* at ¶9). EPW was also

3

required to submit pertinent books and records for an audit by the Funds for verification of said contributions. (*Id*. at ¶14).

Participants of the Funds were allegedly employed by EPW to perform work and provide labor on various construction projects in Michigan. (*Id*. at ¶29). Plaintiffs allege that EPW was obligated to pay fringe benefit contributions to the Funds (*Id*. at ¶32) and that the participants earned outstanding fringe benefit contributions in connection with and in furtherance of their employment and labor on said projects. (*Id*. at ¶31). Plaintiffs allege that EPW received money on the projects, but failed to pay all of the fringe benefit contributions owed to the Funds. (*Id*. at 34).

Plaintiffs allege that Defendant EPW and Defendant Worrell attempted to fraudulently avoid paying benefit contributions by sending Plaintiffs a letter, dated September 23, 2011, which falsely claimed that EPW was a "one employee unit." (*Id*. at ¶25). The letter, which is signed by Defendant Worrell, stated as follows:

> Gentlemen:
>
> Elite Poured Walls has maintained a stable one man unit for almost two years, has no expectations of expanding such unit in the future and has not had a signed collective bargaining agreement with your Union for about eight years. Therefore, Elite Poured Walls is withdrawing recognition and/or repudiating any agreement it may have with the Michigan Regional Council of Carpenters and/or any of its local unions.

(Ex. B to Def.'s Mo). Plaintiffs allege that this was not an effective notice to terminate the CBA (*Id*. at ¶12) because EPW was not a one employee unit during the times relevant to this complaint. (*Id*. at ¶25).

**B.     Procedural Background**

Plaintiffs filed this action against Defendants on August 10, 2016. Plaintiff's Amended

4

Complaint is the operative complaint in this case and it alleges the following counts: Count I – Failure to Permit Audit, in violation of ERISA and the CBA; Count II – Delinquent Contributions, in violation of ERISA and the CBA; Count III – Breach of Fiduciary Duties, in violation of ERISA; and Count IV – Builders Trust Fund.

Plaintiffs seek, among other things: (1) an order that Defendant EPW submit to an audit of its records to verify the amounts owing Plaintiffs; (2) a judgment in Plaintiffs' favor against Defendants for an amount as found owing by said audit; and (3) a declaratory judgment finding EPW bound by the CBA.

In lieu of filing an Answer, Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 17, Def.s' Mo.). In it, Defendants argue that: (1) Plaintiffs' claims must be dismissed because the CBA was immediately terminated on September 23, 2011 pursuant to the one-employee unit rule; (2) that even if the one-employee unit rule did not immediately terminate the CBA, the September 23, 2011 letter terminated the CBA as of August 1, 2012 and any claims subsequent to that date must be dismissed; (3) that Plaintiffs have not plausibly alleged that Defendant Worrell is a fiduciary under ERISA; and (4) that Plaintiffs' MBCFA claims are preempted by ERISA. Plaintiffs have filed a response in opposition to Defendants' motion (Doc. # 20) and Defendants have filed a reply. (Doc. # 21).

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

5

plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

The Sixth Circuit has instructed that at this "early stage," courts should "take into account economic or logistical circumstances that prevent [Plaintiffs] from obtaining evidence supporting [their] claim[s] and adjust the plausibility threshold appropriately to account for these difficulties." *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015).

## ANALYSIS

**A.    Defendants' Challenges To Plaintiffs' ERISA Claims[1]**

    **1.    Termination of CBA**

First, Defendants contend that Plaintiffs' ERISA claims must be dismissed "[b]ecause the

---

[1] To the extent that Defendants argue that Plaintiffs have failed to satisfy the pleading requirements of *Iqbal/Twombly*, the Court is not convinced. Defendants' arguments in this regard are cursory and touch upon evidentiary issues and disputes of fact/credibility. At this juncture, Plaintiff's allegations sufficiently place Defendants on notice of the claims brought against them.

6

CBA between the Union and [Defendant EPW] was voided and terminated effective September 23, 2011." (Def.s' Mo. at 8). Defendants claim that the CBA was terminated in two ways: (1) pursuant to the one employee unit rule; or (2) pursuant to the terms of the CBA itself. The Court concludes that Defendants' arguments as to termination raise factual issues that are inappropriate at the 12(b)(6) stage.

> As a general matter, ERISA § 515 provides that:
>
> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. 1145. Accordingly, employers, like Defendants, who are "obligated to make contributions to a multiemployer plan," like Plaintiffs, must "make such contributions." *Id.*

Defendants are limited in the defenses that they may raise in an ERISA collection action. *Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A & H Mech. Contrs.*, 100 Fed. App'x 396, 401 (6th Cir. 2004). However, the Sixth Circuit has held that "trust funds are not entitled to enforce a *nonexistent* contractual obligation ... at least where it is evident up on a cursory review of the parties' actions that the contract has been terminated." *Laborers Pension Trust Fund-Detroit and Vicinity v. Interior Exterior Specialists Construction Group, Inc.*, 394 Fed. App'x 285, 290 (6th Cir. 2010) (internal quotation marks and citation omitted) (emphasis in original).

Accordingly, an employer may abandon a multiemployer bargaining unit and may terminate its obligations to make ERISA plan contributions "if it (1) unequivocally withdraws from the association (2) ... before negotiations for a new contract begin (3) by communicating the intent to withdraw to all parties." *Plumbers & Pipefitters*, 100 Fed. App'x at 400 (quoting

*Sheet Metal Workers' Int'l v. Herre Bros. Inc.*, 201 F.3d 231, 244 (3d Cir. 1999)).

### a. Termination Pursuant to the One Employee Unit Rule

First, Defendants argue that the September 23, 2011 letter referenced in Plaintiffs' complaint immediately terminated the CBA pursuant to the one-employee unit rule. Defendants conclude that it is "necessary for the Court to make a cursory review under the one person unit rule as to whether there is a contractual obligation supporting Plaintiffs' Complaint." (Def.s' Mo. at 10). The Court finds Defendants' argument unpersuasive at this stage in the proceedings.

Defendants rely on *Baker Concrete Const. Inc. v. Reinforced Concrete Iron Workers Local Union 372 of Int'l Ass'n of Bridge Structural, Ornamental, & Reinforcing Iron Workers*, 2014 WL 4961488 (S.D. Ohio Oct. 2, 2014), for the proposition that construction companies who sign CBAs pursuant to the pre-hire provisions of section 8(f) of the NLRA may unilaterally repudiate the CBA without affording the union an opportunity to bargain.

Specifically, the district court in *Baker Concrete* held that "[w]hen an employer has no intention to employ anyone in the bargaining unit, the one employee unit rule permits employers to repudiate a collective bargaining agreement after only a few months of maintaining a one-or zero-employee unit." *Id.* at *4. The Sixth Circuit later affirmed the district court's holding, s*ee Baker Concrete Const., Inc. v. Reinforced Concrete Contractors Ass'n*, 820 F.3d 827 (6th Cir. 2016), noting that the "one-employee-unit rule is a narrow rule that has been articulated and applied by the NLRB in cases involving CBAs under NLRA § 8(f)." *Baker Concrete*, 820 F.3d at 830 (footnote omitted).

Defendants' reliance on the one-employee unit rule is misplaced for several reasons. First, the Court is not convinced that the one-employee unit rule affects the enforceability of the

CBA for purposes of ERISA. Defendants have not cited a single case in which it was applied in the context of ERISA collection actions. Notably, the Sixth Circuit in *Baker Concrete* specifically held that the issue before it was "whether Baker had a right under the NLRA to repudiate the CBA. This case has to do with the interpretation and application of the NLRA, not with the interpretation and application of the CBA." *Id.* at n.2.

The Seventh Circuit's decision in *J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1, AFL-CIO*, 398 F.3d 967 (7th Cir. 2005), which was extensively cited in *Baker Concrete*, also undermines Defendants' position. In *J.W. Peters*, the Seventh Circuit applied the one-employee unit rule only after distinguishing an earlier decision that declined to apply the rule in the ERISA context. *J.W. Peters*, 398 F.3d at 977. In that earlier decision, the Seventh Circuit held that "the Board's finding that the one-man rule barred a remedy under the NLRA did not resolve the issue of a potential remedy under ERISA. Defenses to the validity of a labor contract and liability under ERISA's section 515 present distinct issues." *Martin v. Garman Const. Co.*, 945 F.2d 1000, 1004 (7th Cir. 1991); *see also Id.* at 1005 (explaining that "[t]he one-man rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA.").

Second, even if the one-employee unit rule applies, it is too early in the proceedings to determine whether or not it applies here. As mentioned above, in the ERISA context, the Sixth Circuit "has permitted limited examination of a contract termination defense, at least if the parties' conduct shows, based on a cursory review, that the contract has been terminated." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1052 (6th Cir. 2015). The Court may therefore engage in "a classically straightforward inquiry into

9

whether the contract still existed." *Id.*

At this juncture, the Court would have to engage in much more than a "limited examination" or "cursory review" to conclude that the CBA was terminated pursuant to the one-employee unit rule. For example, Plaintiff has alleged that EPW was not reduced to a one employee unit at any time relevant to this complaint. Because the Court must accept Plaintiffs' allegations as true, there exists a dispute as to whether EPW was operating with more than one employee. Resolving this issue now would require the Court to go beyond the limited examination envisioned in the case law.

Defendants also summarily argue (in a footnote) that this Court lacks subject matter jurisdiction over the "factual determination" of whether EPW was a one man unit. (Def.s' Mo. at 13, n. 8). Defendants support this claim by arguing that failure to negotiate or to repudiate an agreement is an unfair labor practice pursuant to Section 8(a)(5) of the NLRA. Defendants further claim that exclusive jurisdiction over the decision to repudiate is before the NLRB, not the Court.

The Court is not convinced that it lacks jurisdiction over this "factual determination." Defendants appear to confuse the issues. Plaintiffs here do not allege that Defendants violated section 8(a)(5) of the NLRA by engaging in an unfair labor practice. Instead, Plaintiffs claim that Defendants did not effectively terminate the CBA and have refused to comply with their obligations under ERISA. Moreover, Defendants have raised the one-employee unit rule as a defense. Thus, in arguing that the Court lacks jurisdiction, Defendants are essentially precluding the Court from deciding whether or not Defendants are entitled to the defense. And finally, Defendants fail to cite a case that stands for the proposition that the Court lacks jurisdiction over

this factual determination, where, as here, Plaintiffs have not alleged that Defendants engaged in an unfair labor practice.

### b. Termination Pursuant to Terms of CBA

Defendants alternatively argue that if the one-employee unit rule does not bar Plaintiffs' claims, then "as a result of the September 23, 2011 notice, there is no question of fact or law, that the CBA upon which Plaintiff alleges they are entitled to contributions, was terminated by its own terms on or before August 1, 2012." (Def.s' Mo. at 17).

Although the Court is permitted to consider a contract termination defense in ERISA collection actions, it is too early to make this determination. Importantly, at the motion to dismiss stage, the Court is required to accept Plaintiffs' allegations as true. Here, Plaintiffs allege that Defendants did not effectively terminate the CBA despite the September 23, 2011 letter. Plaintiffs also dispute the assertions made by Defendant Worrell in the letter. Moreover, case law requires the Court to make cursory review of the "parties' conduct," which is not limited to the four corners of the letter. Tellingly, each ERISA case cited by Defendants in this regard decided the issue of termination at the summary judgment stage.[2] As such, the Court finds this argument unpersuasive at this juncture.

### B. Challenges to Claims Against Defendant Worrell Personally

Defendants argue that Plaintiffs claims against Defendant Worrell must fail because: (1) Plaintiffs have not alleged any facts that can support a finding that Defendant Worrell was a fiduciary; and (2) because Plaintiffs have not alleged facts to support a finding that the

---

[2] At the hearing, Defense Counsel was unable to identify an ERISA case that decided the issue of contract termination at the motion to dismiss stage.

contributions at issue became plan assets. Defendants' arguments are not persuasive at this stage in the proceedings.

ERISA provides, in pertinent part, that:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . .

29 U.S.C. § 1002(21)(A). Accordingly, Plaintiffs must allege facts which would permit the Court to plausibly infer that: (1) the unpaid fringe benefits were "plan assets" and (2) that Defendant Worrell exercised "authority or control" over the "management or disposition of those assets.

As to the "plan assets" prong, Defendants rely on this Court's previous decision in *Mich. Bac Health Care Fund v. C.S.S. Contr. Co.*, 2008 WL 1820879, at *5 (E.D. Mich. Apr. 22, 2008), for the proposition that "unpaid employer contributions become plan assets when due only when an agreement between the parties explicitly so provides." (Def.s' Mo. at 21). According to Defendants, a "review of the terms of the CBA and trust agreements do not contain any language expressly stating [employer contributions] become plan assets at the time they become due." (*Id.*).

Defendants' argument is not persuasive in light of the allegations contained in Plaintiffs' complaint. Here, Plaintiffs have alleged that the Trust Agreements for the Funds, as incorporated by the relevant CBA, provide that unpaid contributions become plan assets at the time they become due. (Am. Compl. ¶36). Plaintiffs further allege that Defendant Worrell had

actual and/or constructive knowledge of the Trust Agreements and their respective amendments as of May 2013 – the date in which the Trust Agreements were amended. (*Id*. ¶37). Moreover, the amendments to the Trust Agreements, which are attached to Plaintiffs' complaint, explicitly state that employer contributions become plan assets when they are due and owing. As such, Plaintiffs' have plausibly alleged, at least as of May 2013, that unpaid contributions become plan assets when due.

And to the extent that Defendants argue that the 2013 Trust Agreement amendments went into effect years after Defendants terminated the CBA, this argument presumes that the CBA was effectively terminated. However, as mentioned above, it is too early in the proceedings to make this determination.

As to the "authority or control" prong, Defendants argue that Plaintiffs have done nothing more than allege that Mr. Worrell was a fiduciary because he failed to pay contributions. (Def.s' Mo. at 20). Again, Defendants disregard the allegations in Plaintiffs' complaint. Plaintiffs have alleged that Defendant Worrell, as owner, officer, director and/or member of Defendant EPW personally exercised discretionary authority and control over the disposition of EPW's accrued fringe benefit contributions. (Am. Compl. ¶41). Plaintiffs further allege that Defendant Worrell avoided paying benefit contributions by falsely claiming that EPW was a one employee unit. (*Id*. ¶50). Plaintiffs also allege that Defendant Worrell failed to pay benefit contributions when due and that he utilized the outstanding contributions within his possession and control for purposes other than payment to Plaintiff Funds. (*Id*. ¶¶45-46). At this juncture, Plaintiffs have sufficiently alleged that Defendant Worrell exercised control over the disposition of the plan's assets (*i.e.*, the fringe benefit contributions).

13

**C. Challenges Against Michigan Building Contract Fund Act ("MBCFA") Claims**

In their final argument, Defendants assert that Plaintiffs' claims under the Michigan Building Contract Fund Act must be dismissed because they are preempted by ERISA. (Def.s' Mo. at 22). Defendants have not cited a single case that supports the proposition that claims under the MBCFA are preempted by ERISA.

Defendants alternatively argue that Plaintiffs' MBCFA claims must be dismissed because EPW had no obligation to make contributions to the Funds as a result of the September 23, 2011 letter. Again, this argument presupposes facts (effective termination) that have not yet been established. It is too early in the proceedings to determine the termination issue. As such, Defendants' arguments against Plaintiffs' MBCFA claims fail.

## CONCLUSION

For the foregoing reasons, the Court shall **DENY** Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

                                        s/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: May 24, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 24, 2017, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy
                                        Case Manager